**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JOSE LOZANO,

Plaintiff,

v.

PRIDE INDUSTRIES, *et al.*,

Defendants.

Case No. 26-cv-01466-BAS-SBC

**ORDER GRANTING IN PART AND DENYING IN PART THE PRIDE DEFENDANTS' MOTION TO DISMISS (ECF No. 5)**

This case centers around labor disputes between Plaintiff Jose Lozano, his former employer Pride Industries ("Pride"), his former supervisor Chris Bunch, and his former collective bargaining representative, International Union of Operating Engineers, Local Union 501 (the "Union") (together with Pride and Bunch, "Defendants").

Defendants Pride and Bunch (the "Pride Defendants") move to dismiss Plaintiff's complaint. (ECF No. 5 ("Mot.").) Plaintiff opposes. (ECF No. 9 ("Opp'n").) The Pride Defendants reply. (ECF No. 16.) The Union separately opposes Pride's alternative request to compel Plaintiff's claims into arbitration. (ECF No. 14.) The Court finds the Pride Defendants' motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). Upon review, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

## I. BACKGROUND

Plaintiff served as a Building Engineer on a Judicial Council of California ("JCC") contract operated by Defendant Pride Industries from April 2020 until his layoff in July 2025. (ECF No. 1-2, Complaint ("Compl.") at 2–3, Ex. 7.)[1] Plaintiff's employment with Pride was covered by a Collective Bargaining Agreement ("CBA") between Pride and the Union. (*Id.* at 4.) The Union served as Plaintiff's exclusive collective bargaining representative. (*Id.* at 2.) Defendant Chris Bunch is an individual that served as a "supervisor, manager, and/or decision-maker for [Pride]" at the relevant times. (*Id.*)

The CBA covered numerous aspects of Plaintiff's employment with Pride. For example, Plaintiff quotes from, and asserts claims based on, CBA provisions covering employee qualifications, seniority rights, and payout of accrued sick leave. (*Id.* at 3–4.)

In 2021, Plaintiff notified Pride and the Union in writing that multiple Pride engineers did not possess the EPA 608 Universal Certification that was required by the CBA. (*Id.* at 3, 8.) Chris Bunch was aware of these complaints. (*Id.* at 3.) Neither Pride nor the Union acted on this matter. (*Id.* at 3, 8.)

On July 12, 2025, Pride held a mandatory meeting with several employees, including Plaintiff, to discuss "performance issues on the JCC contract and implementation of a new time-tracking system." (*Id.* at 5.) Mr. Bunch organized the meeting and sat next to Plaintiff. (*Id.*) Plaintiff raised various concerns regarding "system failures, mismanagement, and compliance issues" at the meeting within earshot of Mr. Bunch. (*Id.*) In response, Mr. Bunch "publicly scrutiniz[ed] Plaintiff's performance metrics" despite those same metrics indicating that Plaintiff executed his duties competently. (*Id.*) Shortly thereafter, Mr. Bunch exercised his supervisory authority and influenced or participated in the decision that resulted in Plaintiff's selection for layoff. (*Id.*)

Pride laid Plaintiff off on July 14, 2025. (*Id.* at 6.) Pride provided no written notice or justification for the layoff in a manner consistent with the CBA. (*Id.*) At the time of his

---

[1] The Court refers to Plaintiff's allegations in his Complaint by page number, rather than paragraph number, for clarity because his Complaint renumbers the paragraphs at various points.

layoff, Plaintiff was the only Building Engineer laid off in his district, despite having over seven years of seniority. (*Id.*) Plaintiff alleges his layoff was in retaliation for raising various compliance and mismanagement concerns at Pride. (*Id.* at 5.) Plaintiff believes the Union failed to protect him from Pride's retaliatory discharge and separately failed to enforce various CBA provisions. (*Id.* at 7.) Plaintiff separately accuses the Union of failing to act on Pride's alleged retention of engineers that were missing required "EPA 608 federal certifications" on certain job sites, despite the CBA mandating these certifications for Building Engineers. (*Id.* at 3, 8.) Following Plaintiff's layoff, Pride brought engineers from other locations with less seniority to replace him, in violation of the "per-job-site seniority" provisions of the CBA. (*Id.* at 6.)

Plaintiff "repeatedly attempted, over a period of months, to resolve his grievances through both [Pride] and the Union." (*Id.* at 5.) Plaintiff submitted "grievances and written complaints regarding retaliation, seniority violations, unpaid sick leave, and unlawful conduct." (*Id.*) Plaintiff states the Union "failed to meaningfully pursue enforcement of the CBA" and attaches copies of "Plaintiff's correspondence with Pride and the Union, and communications exchanged during Plaintiff's intent to correct violations" in support of his claims. (*Id.*)[2] Several months after his termination, in November 2025, Plaintiff filed a grievance with the Union and sent a demand letter to Pride. (*Id.* Ex. 7.) Seeing no satisfactory resolution, Plaintiff filed a Complaint against both the Pride Defendants and the Union in San Diego Superior Court on January 7, 2026. (*Id.* at 1.) The Pride Defendants removed the case to federal court with the Union's consent on March 6, 2026. (ECF No. 1.)[3]

---

[2] Plaintiff attaches a number of exhibits to his Complaint, which the Court will consider as part of the Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[3] Plaintiff includes new factual allegations in his opposition to the motion. (*See generally* Opp'n.) The Court declines to consider any factual allegations outside of the Complaint in its analysis. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("[I]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014))).

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests that standard by seeking dismissal for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions may provide the framework of a complaint, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in other words, enough to render the claim plausible. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570).

In ruling on a motion to dismiss, the court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

If dismissal is warranted, the court considers whether to grant leave to amend. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011).

## III. ANALYSIS

### A. Request for Judicial Notice

Pride asks this Court to take judicial notice of the CBA between it and the Union. (ECF No. 5-4.) Under Federal Rule of Evidence 201(b), courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). Courts "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

The Court will take judicial notice of the CBA. First, the document has been properly authenticated. (*See* ECF No. 5-3, Declaration of Eren Ortiz.) The Ortiz Declaration authenticates the CBA attached to Pride's motion as "[a] true and correct copy of the CBA between Pride and the Union, effective April 1, 2021, through March 31, 2027" under penalty of perjury. (*Id.* ¶ 2); Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). "Courts regularly 'take judicial notice of a CBA in evaluating a motion to dismiss.'" *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142 (N.D. Cal. 2019) (quoting *Hernandez v. Sysco Corp.*, No. 16-CV-06723-JSC, 2017 WL 1540652, at *2 (N.D. Cal. Apr. 28, 2017)). "In particular, '[c]ourts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of preemption.'" *Id.* (quoting *Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012)). Plaintiff does not oppose Pride's request for judicial notice. (*See generally* Opp'n.) Pride does not appear to seek consideration of the CBA for improper purposes, like establishing facts outside the CBA, and instead seeks judicial notice to "show only that the CBA says what it says, for the purpose of determining preemption." *See Sarmiento*, 367 F. Supp. 3d at 1143. Accordingly, the Court **GRANTS** the request and will judicially notice the CBA. (ECF No. 5-4, Ex. A ("CBA").)[4]

---

[4] The Court also finds that the CBA is properly considered through the incorporation by reference doctrine. Unlike the rule-established judicial notice vehicle, incorporation by reference is "a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Courts "may consider extrinsic evidence not attached to the complaint if the document's authenticity is not contested and the plaintiff's complaint necessarily relies on it." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015). For the reasons stated throughout this order, the Court finds that Plaintiff's complaint "necessarily relies" on the CBA for nearly every single claim except for retaliation. In fact, the CBA supplies the rights that

**B. Labor Management Relations Act ("LMRA") Preemption**

Section 301 of the LMRA permits "[s]uits for violation of contracts between an employer and a labor organization" to be brought "in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). "Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)); *see also Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962). It follows that any suit claiming "a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Lueck*, 471 U.S. at 210. State rules that "purport[] to define the meaning or scope of a term in a contract suit therefore [are] preempted by federal labor law." *Id.* Section 301 preemption has "extraordinary pre-emptive power." *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987). Though LMRA preemption is extraordinary, the Supreme Court nevertheless emphasizes that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). Extending § 301 preemption beyond its defined role "would be inconsistent with congressional intent." *Lueck*, 471 U.S. at 212.

The Ninth Circuit applies a two-step test to ensure that Section 301 preemption "extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes." *Curtis*, 913 F.3d at 1152 (citation modified). First, the court asks "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Id.* (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). The "essential inquiry" under the first step is: "does the claim seek purely to vindicate a right or duty created by the CBA itself?" *Id.* (citation modified). If so, the claim is

---

Plaintiff seeks to vindicate in nearly every single cause of action he asserts. Accordingly, the Court may properly consider the CBA, as authenticated by Pride in its moving papers, incorporated by reference.

preempted and the analysis ends there. *Id.* at 1153 (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).

If the analysis does not end there, courts must proceed to step two. This step asks "whether a plaintiff's state law right is substantially dependent on analysis of [the CBA], which turns on whether the claim cannot be resolved by simply look[ing] to versus interpreting the CBA." *Id.* (citation modified). The Ninth Circuit is clear that "interpretation" at step two "is construed narrowly." *Id.* "Claims are only preempted to the extent there is an active dispute over the meaning of the contract terms." *Id.* (citation modified). "Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Id.* (citing *Livadas*, 512 U.S. at 125).

With these principles in mind, the Court analyzes each of Plaintiff's claims against Pride for LMRA preemption.

**1. Wrongful Termination in Violation of Public Policy (Count I)**

Defendant argues that Plaintiff's wrongful termination claim is preempted by the LMRA. The Court agrees.

Plaintiff's wrongful termination claim is necessarily wrapped up in seniority, which is a right entirely derived from the CBA between Pride and the Union. Plaintiff alleges that Pride "unlawfully" laid him off "despite his seniority." (Compl. at 7.) At the time of his termination, Plaintiff "was the only Building Engineer laid off in District 5, despite having over seven (7) years of seniority." (*Id.* at 6.) He further asserts that Pride violated the CBA by providing no "written layoff notice or justification," and "unlawfully [bringing] engineers from other locations with less seniority to replace [him]." (*Id.*) It is longstanding precedent that "seniority rights are neither inherent nor constitutional, but rather are created either by statute or by contract." *N.L.R.B. v. Int'l Ass'n of Machinists, Aeronautical Indus. Dist. Lodge 727*, 279 F.2d 761, 765 (9th Cir. 1960) (collecting authority). Plaintiff's wrongful termination claim, premised on violations of seniority rights, therefore

necessarily seeks to "vindicate a right . . . created by the CBA itself" and fails at step one of the *Curtis* test. *See Curtis*, 913 F.3d at 1152 (citation modified).

Even if the seniority provisions were not implicated by step one, they certainly are implicated by step two, as determining whether Plaintiff was terminated in violation of the CBA necessarily requires the Court to interpret the seniority provisions themselves. The Court finds that this would involve resolving active disputes over the meaning of the CBA, *see Curtis*, 913 F.3d at 1153, for example: how seniority is calculated under the CBA; calculating Plaintiff's and his comparators' seniority; and whether Pride violated "per-job-site" seniority rules when it brought in other, less senior engineers to replace Plaintiff. (Mot. at 16; Compl. at 6.) To the extent Plaintiff challenges his termination over the assignment and qualifications of his fellow employees, that would also require resolution of active disputes over the application of various CBA terms. (*See* Mot. at 16 (citing Articles IV.G and XII of the CBA, which outline employee job descriptions, impose mandatory qualifications, and allow Pride to consider certifications as a factor in applying seniority provisions).) In sum, Plaintiff's wrongful termination claim necessarily implicates resolution of active disputes over, and interpretation of, the negotiated CBA between Pride and the Union. For those reasons, Count I is **PREEMPTED** by the LMRA.

**2. Failure to Pay Accrued Sick Leave (Count III)**

Plaintiff asserts that Pride failed to pay him over 100 hours of accrued sick leave, which he contends constitute earned wages under California law. (Compl. at 4, 9.) As an initial observation, the Court notes that California "employers are not required to provide wages upon termination for any accrued paid sick days." *Jacob v. CSL Plasma Inc.*, No. 24-cv-01807-H-DEB, 2024 WL 5130850, at *3 (S.D. Cal. Dec. 16, 2024) (citing Cal. Lab. Code § 246(g)(1)). Considering the unavailability of a claim for unpaid sick leave as a matter of state law, any claim for such unpaid wages must then derive from rights granted by the CBA. It follows that Count III seeks to vindicate a right created by the CBA itself

and therefore must be preempted at step one of the inquiry. *See Curtis*, 913 F.3d at 1152–53.[5]

Plaintiff also appears to allege claims derivative of Pride's failure to pay sick leave, such as waiting time penalties under Cal. Lab. Code § 203. Since the Court has found that Plaintiff's claim for unpaid sick leave is preempted, claims derivative of that primary claim are also preempted. *See Giles v. Canus Corp.*, No. 22-cv-03097-MMC, 2022 WL 3370793, at *6 (N.D. Cal. Aug. 16, 2022) (preempting waiting time claims that were derivative of claims preempted by the LMRA). For the foregoing reasons, Count III is **PREEMPTED** by the LMRA.

### 3. Retaliation (Count II)

Plaintiff asserts a retaliation cause of action against Pride for "raising compliance and contractual violations" that resulted in his termination, in violation of California Labor Code § 1102.5. (Compl. at 7, 9.) Defendant contends that this claim should be preempted because it implicates just-cause-termination, discipline, and grievance provisions of the CBA. (Mot. at 19.)

The elements of a California Labor Code Section 1102.5 claim are: (1) the employee engaged in protected activity; and (2) retaliation by the employer for the employee's whistleblowing activity was a "contributing factor" to an adverse employment action. *Soeten v. CACI, Inc.*, No. 24-cv-00043-JAH-BLM, 2025 WL 1746307, at *11 (S.D. Cal. June 24, 2025) (citing *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 707 (2022)). Once those elements are satisfied, the employer then bears the burden of showing it would have taken the same action(s) for independent, legitimate reasons. *Id.* (citing *Lawson*, 12 Cal. 5th at 707).

---

[5] In the alternative, Count III is preempted at step two of the *Curtis* inquiry. The Court finds that resolution of Count III turns on resolving active disputes between the parties over the application of the CBA's sick leave provisions. *See Curtis*, 913 F.3d at 1153 (citations omitted); (*Compare* Compl. at 4 *with* Compl. Ex. 8 (demonstrating active dispute between the parties over requirement to pay out sick leave upon termination).)

The Court declines to hold that Plaintiff's retaliation claim is preempted. A retaliation claim concerns the "respective actions of the employer and employee" and "this inquiry will not depend on interpretation of [a] CBA." *Brown v. Brotman Med. Ctr., Inc.*, 571 F. App'x 572, 575 (9th Cir. 2014) (memorandum disposition). The analysis is factual and concerns the motivations behind a defendant's allegedly retaliatory conduct without reference to the CBA. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (holding that whether the defendant had a non-retaliatory reason to terminate plaintiff is a "purely factual inquiry [that] does not turn on the meaning of any provision of a collective-bargaining agreement"); *Torres v. Walt Disney Parks & Resorts US, Inc.*, No. 25-CV-00148-DOC-ADS, 2025 WL 2631547, at *7 (C.D. Cal. May 7, 2025) (declining to preempt plaintiff's Cal. Lab. Code § 1102.5 retaliation claim because "whether Defendants acted with retaliatory intent [is] a factual question that does not turn on the meaning of the CBA"); *see also Ku v. Argent Hotel Mgmt., LLC*, No. 20-CV-05026-LB, 2020 WL 5836506, at *4 (N.D. Cal. Oct. 1, 2020) (declining to find LMRA preemption against Cal. Lab. Code § 1102.5 retaliation claim and holding that "the claims here turn on resolution of the employer's motives, not on an interpretation of the CBA, even if those terms identify the terms of employment" (citation modified)).

Analyzing whether Plaintiff was terminated due to his alleged protected activity does not require an analysis of the CBA. Pride argues that Plaintiff's retaliation claim is preempted because it is wrapped up in seniority, discipline, and termination—all of which are covered by, and would require interpretation of, the CBA. (Mot. at 19–20.) The Court declines to stretch the CBA that broadly. *See Curtis*, 913 F.3d at 1152 ("[T]he Supreme Court has stressed that § 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law." (citation modified)). Plaintiff is alleging Pride terminated him for refusing to engage in conduct he contends was unlawful and for engaging in protected activity. (Compl. at 5, 7, 9.) The elements of Plaintiff's retaliation claim will be analyzed without reference to the CBA. *See Soeten*, 2025 WL 1746307, at *11. The mere happenstance that a state law claim and a claim under

the CBA may be analyzed using the same facts is not sufficient grounds for preempting that state law claim. *See Lingle*, 486 U.S. at 408 (rejecting contention that mere "parallelism" between state law analysis and CBA analysis renders state law claims preempted by the LMRA). Accordingly, the Court **DENIES** the motion to dismiss Plaintiff's retaliation cause of action on LMRA preemption grounds.

**4. Breach of Collective Bargaining Agreement and Hybrid LMRA Section 301 claims (Counts IV & VI)**

Pride argues that Plaintiff's breach of CBA cause of action is the "clearest case of LMRA preemption because he is alleging a violation of rights conferred solely by the CBA." (Mot. at 14.) As far as the Court can tell, Pride does not specifically present an argument for preemption of the hybrid claim but nevertheless argues that "Section 301 preempts each of Plaintiff's claims." (*Id.*)

Pride incorrectly shoehorns federal causes of action into a preemption inquiry focused on state law. Section 301 preemption concerns displacement of state law in the interpretation and enforcement of collective bargaining agreements. *Kobold*, 832 F.3d at 1032 ("The [Supreme] Court . . . held that this federal common law [of labor contracts] preempts the use of state contract law in CBA interpretation and enforcement." (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001))); *Lueck*, 471 U.S. at 209–10 (observing that in enacting Section 301 "Congress intended doctrines of federal labor law [to] uniformly [] prevail over inconsistent local rules" (citation modified)); *see also Happ v. Reno Disposal Co.*, No. 13-cv-00467-MMD-WGC, 2015 WL 4723618, at *3 (D. Nev. Aug. 10, 2015) (declining to preempt federal FMLA cause of action pursuant to Section 301 and observing that "[t]he major Supreme Court decisions interpreting and applying Section 301 preemption have only done so with regard to state law claims" (collecting authority)). Counts IV and VI are undoubtedly federal in nature. *See Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1210 (9th Cir. 1999) (characterizing a breach of collective bargaining agreement claim as a "federal claim[]"); (Compl. at 10 (asserting a federal hybrid Section 301 cause of action under 29 U.S.C. § 185).) Pride cites no authority

providing for LMRA preemption of federal, as opposed to state, causes of action. Accordingly, the Court will decline to preempt Counts IV and VI pursuant to the LMRA.

Lack of preemption is not the end of the inquiry. Pride separately argues that Plaintiff's claims (including Counts IV and VI) should be dismissed for failure to exhaust the CBA's grievance and arbitration procedures. (Mot. at 20.) It is true that an employee may not generally "sidestep the grievance machinery provided in the [CBA]" and that "unless he attempt[s] to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court" should be dismissed. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976) (citation omitted). In some circumstances, however, an employee may be excused from exhausting the CBA's dispute resolution machinery. *See Vaca v. Sipes*, 386 U.S. 171, 185–86 (1967).

It is not immediately clear to the Court that Plaintiff complied with exhaustion or whether he is excused from doing so, as Plaintiff's Complaint is sparse on this matter. For this and the reasons outlined in the following section, *see infra* Section III(C), the Court **GRANTS** the motion to dismiss Counts IV and VI. Plaintiff is granted leave to amend his Complaint to plead compliance with (or excuse from) exhaustion of the CBA's grievance and arbitration procedures.

**C. Whether Preemption Requires Dismissal**

Having found that Counts I and III are preempted under Section 301 of the LMRA, the question then becomes whether preemption requires dismissal. The Supreme Court has held that when LMRA preemption applies, courts should either treat the state law claim as a Section 301 claim or dismiss the claim as preempted by federal labor law. *Lueck*, 471 U.S. at 220 (citation omitted). The Ninth Circuit in *Kobold* made clear that "the conclusion that § 301 precludes adjudication of a state law claim in whole or [in] part does not automatically require dismissal of a union-represented employee's challenge of an employer's actions." 832 F.3d at 1036. Rather, a plaintiff may "maintain [his] claim if [he] can demonstrate that [his] remedies under the [] CBA were exhausted or can yet be exhausted . . . or that [his] union breached its duty of fair representation in failing to do so,

and if [the] court then determines that litigation of [his] state cause of action remains available." *Id.*

Plaintiff has not adequately pleaded whether he either complied with his duty to exhaust his contractual remedies or whether he is excused from pursuing them. Plaintiff flatly states in the Complaint that the Union refused "to process or pursue Plaintiff's grievances" and that he attempted to file grievances regarding his "layoff, qualification issues, and federal licensing violations," but that Union representatives "refused to allow [him] to submit a grievance, contradicting the grievance procedures in the Union contract." (Compl. at 7, Ex. 7.) There is no color as to when Plaintiff attempted to file these grievances, what the contents of these grievances were, who from the Union prevented Plaintiff from filing, why the Union may have prevented him from filing these grievances, how Plaintiff otherwise attempted to comply with the CBA's grievance procedures, or how he is excused from doing so. The CBA's grievance procedures call for a grievance to be presented "within thirty (30) calendar days after the occurrence giving rise to the grievance" or within thirty calendar days "of the time the employee or the Union reasonably could have acquired knowledge of the event, otherwise, the grievance shall not be heard or considered." (CBA Art. XIX at 22.) As an exception, "all discharge grievances must be submitted by the employee or the Union in writing to the Employer within ten (10) working days after the discharge." (*Id.* at 23.) Based on the Complaint and the exhibits attached thereto, the Court is unable to determine whether Plaintiff complied with the CBA's procedures for presenting a grievance. Indeed, Plaintiff's only relevant allegations indicate that he did not raise a grievance regarding his termination until November 2025, nearly four months after his termination and long after deadlines for raising such grievances had passed. (*See* Ex. 7 (showing grievance filings with the Union and Pride dated November 12, 2025, and November 24, 2025, respectively).) The Court, however, cannot determine based on the state of the pleadings whether it would be futile to allow Plaintiff leave to amend his Complaint.

The Court will allow Plaintiff leave to amend his Complaint to provide factual detail as to whether he complied with the CBA's grievance procedures or whether he is excused under the law from such compliance. Plaintiff is warned that if he does not provide sufficient factual detail in an amended pleading, he may not be granted further leave to amend. Plaintiff may not add any new parties or claims without leave of Court. If Plaintiff does not correct the identified deficiencies in his pleadings by the deadline stated at the end of this order, the Court will dismiss the claims against Pride (except retaliation) without further leave to amend and without further notice.

The Court finds that this approach is consistent with the preference for allowing plaintiffs leave to amend their complaints "when justice so requires," *see* Fed. R. Civ. P. 15, and would facilitate the Court's informed determination of whether Plaintiff's preempted state law claims should proceed in federal court as converted Section 301 claims. *See Lueck*, 471 U.S. at 220.

**D. Defendant Chris Bunch**

Plaintiff asserts two causes of action against Defendant Chris Bunch, wrongful termination in violation of public policy and a hybrid § 301 claim. Both fail for the same reason: Mr. Bunch is not Plaintiff's "employer" as a matter of law. Wrongful termination claims are generally unavailable as a matter of California law against individuals that are not the plaintiff's employer. *See Khajavi v. Feather River Anesthesia Med. Grp.*, 84 Cal. App. 4th 32, 53 (2000) ("As a matter of law, only an employer can be liable for the tort of wrongful discharge in violation of public policy."); *see also Jacobs v. Universal Dev. Corp.*, 53 Cal. App. 4th 692, 703–04 (1997) (holding that managerial employees could not be held liable for wrongful termination because they were not the plaintiff's employer). Claims under Section 301 of the LMRA are similarly unavailable against non-employer individual defendants. "The law is well settled that individual employees are not proper parties to a suit brought under § 301 of the Labor Management Relations Act . . . . Rather, § 301 suits are confined to defendants who are signatories of the collective bargaining agreement under which they are brought." *Williams v. Kiewit Pac. Co.*, No. C 05-04626

JAW, 2006 WL 213745, at *2 (N.D. Cal. Jan. 27, 2006) (quoting *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1212 (5th Cir. 1980)).[6] Plaintiff does not allege that Mr. Bunch was his employer.[7] Rather, he alleges that Mr. Bunch "is an individual" that served as a "supervisor, manager, and/or decision-maker for [Pride]" at the relevant times. (Compl. at 2.) It follows that both the wrongful termination and Section 301 charges against Mr. Bunch are unavailable to Plaintiff as a matter of law. The Court thus finds that any amendment of these claims would be futile. Accordingly, the Court **DISMISSES WITH PREJUDICE** the claims asserted against Mr. Bunch in the Complaint.

**E. Alternative Request to Compel Arbitration**

Pride asks, in the alternative, for the Court to compel any claims surviving its motion into arbitration. Plaintiff's sole remaining claim is a California state law claim for retaliation pursuant to California Labor Code § 1102.5. As the Court found above, Plaintiff's retaliation claim is based on California law and does not require interpretation of the CBA. *See supra* Section III(B)(3). Pride relies on the general grievance and arbitration provisions of the CBA to argue that Plaintiff's retaliation claim must be arbitrated. (Mot. at 23.) That position is unsupported by law. "The Supreme Court has held that [] a waiver of an employee's right to present grievances based on statutory rights in a judicial forum must be 'clear and unmistakable.'" *Gunther v. N. Coast Coop., Inc.*, No. 20-cv-02325-RMI, 2020 WL 3394547, at *9 (N.D. Cal. June 19, 2020) (quoting *Wright v.*

---

[6] Other courts agree with the well settled principle that individual employees are not proper parties to an LMRA Section 301 suit. *See, e.g.*, *Bosworth v. Maritime*, No. CV 15-00285 LEK-KJM, 2016 WL 4472987, at *6–7 (D. Haw. July 29, 2016) (recommending dismissal of § 301 claims brought against individual employees without leave to amend), *adopted by* No. CV 15-00285 LEK-KJM, 2016 WL 4445234 (D. Haw. Aug. 23, 2016); *Sine v. Local No. 992, Int'l Bhd. of Teamsters*, 730 F.2d 964, 966 (4th Cir. 1984) (holding that Section 301 suits may only be brought against parties to the contract); *Loss v. Blankenship*, 673 F.2d 942, 946–47 (7th Cir. 1982) (agreeing with the reasoning in *Ramsey* and holding that complaint against individual employee was not actionable under § 301).

[7] While Mr. Bunch is listed as the third agent signing the CBA on behalf of Pride Industries, (CBA at 26), he is still not a proper defendant to a Section 301 suit. Though *Ramsey* states that Section 301 suits are "confined to defendants who are signatories of the collective bargaining agreement under which they are brought," the court seems to refer to entity-level signatories as the very next sentence states that "the [LMRA] was not designed to impose personal liability on employees of corporate organizations." *See Ramsey*, 631 F.2d at 1212.

*Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998)); *see also Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983) ("[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'"). A review of the contractual provision at issue here confirms that there is no such "clear and unmistakable" waiver of Plaintiff's asserted statutory right against retaliation. (*See* CBA at 22–23.) Article XIX of the CBA is entitled "Grievances and Arbitrations," and outlines the policies and procedures for asserting grievances and eventually submitting a matter to arbitration. (*Id.*) It is devoid of any language purporting to waive Plaintiff's statutory right against retaliation. In fact, the CBA states in no uncertain terms that "[o]nly grievances involving the interpretation or application of this Agreement are arbitrable[.]" (*Id.*) As the Court found above, Plaintiff's retaliation claim does not in any manner depend on the CBA for resolution. For these reasons, the Court **DENIES** Defendant's alternative request to compel Plaintiff's surviving retaliation claim into arbitration.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Pride Defendants' motion to dismiss (ECF No. 5). The Court orders as follows:

(1) Pride's motion with respect to Counts I and III is **GRANTED** and those claims are **DISMISSED WITHOUT PREJUDICE** as preempted by the Labor Management Relations Act. Plaintiff is given leave to amend as detailed above.

(2) Pride's motion with respect to Counts IV and VI is **GRANTED** and those claims are **DISMISSED WITHOUT PREJUDICE** for failure to adequately plead exhaustion or excuse from exhaustion. Plaintiff is given leave to amend as detailed above.

(3) Pride's motion with respect to Count II is **DENIED**. The Court further **DENIES** the alternative request to compel Plaintiff to arbitrate Count II.

(4) Chris Bunch's motion with respect to Counts I and VI is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** as to Mr. Bunch based on futility of amendment. Plaintiff is denied leave to amend these claims.

(5) If Plaintiff wishes to file a First Amended Complaint consistent with the Court's leave to amend, he must file it no later than **October 29, 2026.** Plaintiff is warned that if he does not provide sufficient factual detail in an amended pleading, the Court may not grant leave to amend again. Plaintiff may not add any new parties or causes of action without leave of Court. If Plaintiff does not file an amended complaint by the deadline stated, Pride shall file its answer no later than **November 5, 2026**.

**IT IS SO ORDERED.**

**DATED: October 8, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**