**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JOSE LOZANO,

Plaintiff,

v.

PRIDE INDUSTRIES, *et al.*,

Defendants.

Case No. 26-cv-01466-BAS-SBC

**ORDER GRANTING UNION'S MOTION TO DISMISS (ECF No. 7)**

This case centers around labor disputes between Plaintiff Jose Lozano, his former employer Pride Industries ("Pride"), and his former collective bargaining representative, International Union of Operating Engineers, Local Union 501 (the "Union") (together with Pride, "Defendants").

Presently before the Court is the Union's motion to dismiss Plaintiff's complaint. (ECF No. 7.) Plaintiff opposes, and the Union replies. (ECF Nos. 11, 13.) The Court finds the Union's motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). Upon review, the Court **GRANTS** the motion.

## I. BACKGROUND

Plaintiff served as a Building Engineer on a Judicial Council of California contract operated by Defendant Pride Industries from April 2020 until his layoff in July 2025. (ECF

No. 1-2, Complaint ("Compl.") at 2–3, Ex. 7.)[1] Plaintiff's employment with Pride was covered by a Collective Bargaining Agreement ("CBA") between Pride and the Union. (*Id.* at 4.) The Union served as Plaintiff's exclusive collective bargaining representative. (*Id.* at 2.)

The CBA covered numerous aspects of Plaintiff's employment with Pride. For example, Plaintiff quotes from, and asserts claims based on, CBA provisions covering employee qualifications, seniority rights, and payout of accrued sick leave. (*Id.* at 3–4, 6.)

Pride terminated Plaintiff's employment through a layoff on July 14, 2025. (*Id.* at 6.) Pride provided no written notice or justification of the layoff in a manner consistent with the CBA. (*Id.*) At the time of his layoff, Plaintiff was the only Building Engineer laid off in his district, despite having over seven years of seniority. (*Id.*) Plaintiff believes his layoff was in retaliation for raising various compliance and mismanagement concerns at Pride. (*Id.* at 5.) The Union allegedly failed to protect him from Pride's retaliatory discharge and separately failed to enforce various CBA provisions. (*Id.* at 7.) Plaintiff also accuses the Union of failing to act on Pride's alleged retention of engineers that were missing "EPA 608 federal certifications" on certain job sites, despite the CBA mandating these certifications for Building Engineers. (*Id.* at 3, 8.)

Plaintiff "repeatedly attempted, over a period of months, to resolve his grievances through both [Pride] and the Union." (*Id.* at 5.) Plaintiff submitted "grievances and written complaints regarding retaliation, seniority violations, unpaid sick leave, and unlawful conduct." (*Id.*) Plaintiff states the Union "failed to meaningfully pursue enforcement of the CBA." (*Id.*)[2] On November 24, 2025, four months after his termination, Plaintiff sent the

[1] The Court refers to Plaintiff's allegations in his Complaint by page number, rather than paragraph number, for clarity because his Complaint renumbers the paragraphs at various points.

[2] Plaintiff attaches a number of exhibits to his Complaint, which the Court will consider as part of the Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Most of the Complaint's eight exhibits are not directly related to Plaintiff's claims against the Union or otherwise do not involve the Union. (Compl. Ex. 1 (letter addressed solely to Pride)); (Compl. Ex. 3 (Employee Performance Counseling write-up addressed to Lozano by Pride)); (Compl. Ex. 4 (letter addressed solely to Pride)); (Compl. Ex. 5 (Internal Pride Memorandum)); (Compl. Ex. 8 (letter addressed solely to Plaintiff by Pride)).

Union an "Intent to Sue" letter describing some of the allegations he now raises in federal court. (*Id.* Ex. 7.) In the same letter, Plaintiff states that at an unknown time he attempted to file a grievance "regarding [his] layoff, qualification issues, and federal licensing violations" but Union representatives "refused to allow [him] to submit a grievance, contradicting the grievance procedures" in the CBA. (*Id.*)[3]

Seeing no satisfactory resolution, Plaintiff filed a *pro se* Complaint against the Union in San Diego Superior Court on January 7, 2026. (*Id.* at 1.) Pride removed the case to federal court with the Union's consent on March 6, 2026. (ECF No. 1.) In his Complaint, Plaintiff asserts three claims against the Union: (A) wrongful termination in violation of public policy; (B) breach of the duty of fair representation; and (C) a hybrid Section 301 claim under the Labor Management Relations Act ("LMRA"). The Court will analyze each claim in turn.

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests that standard by seeking dismissal for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions may provide the framework of a complaint, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in other words, enough to render the claim plausible. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570).

---

[3] Plaintiff includes new factual allegations in his opposition to the Union's motion. (*See generally* Opp'n.) The Court declines to consider any factual allegations outside of the Complaint in its analysis. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("[I]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014))).

In ruling on a motion to dismiss, the court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

If dismissal is warranted, the court considers whether to grant leave to amend. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

## III. ANALYSIS

### A. Wrongful Termination in Violation of Public Policy (Count I)

In *Tameny*, the California Supreme Court held "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980). To state a claim for wrongful termination in violation of public policy (often referred to as a "*Tameny* claim"), a plaintiff must plausibly plead the following elements: "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014) (citation omitted). "An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which *an employer* commits that tort. This conclusion flows logically from our reasoning in *Tameny*." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 900 (2008) (emphasis in original).

Plaintiff's claim against the Union fails as a matter of law because the Union is not Plaintiff's employer. Plaintiff's Complaint is bereft of allegations that plausibly support an inference the Union was his employer. Plaintiff's primary allegations against the Union

center around its alleged failure to meet its union-related duties under the CBA and its alleged breach of the duty of fair representation owed to Plaintiff. (*See* Compl. at 9–10.) Plaintiff fails to allege anywhere in his Complaint that the Union was his employer. Rather, he specifically alleges the Union was his "exclusive bargaining representative." (*Id.* at 2.) That is fatal to a *Tameny* wrongful termination claim, as the entire cause of action is premised on an employer-employee relationship that is wholly absent here. *See Yau*, 229 Cal. App. 4th at 154; *Miklosy*, 44 Cal. 4th at 900.

Without any factual allegations supporting a reasonable inference the Union was Plaintiff's employer, Plaintiff's *Tameny* claim cannot stand. The Court therefore **GRANTS** the Union's motion to dismiss Count I.

**B. Breach of the Duty of Fair Representation (Count V) and Hybrid Section 301 Labor Management Relations Act Claim (Count VI)**

The Court considers Plaintiff's last two counts together because they both depend on the sufficiency of Plaintiff's duty of fair representation claim. "A union's duty of fair representation grows from its statutory right to exclusive representation." *Demetris v. Transp. Workers Union of Am., AFL-CIO*, 862 F.3d 799, 804 (9th Cir. 2017). Because a union has the "exclusive statutory authority to represent its members, it has a corresponding legal obligation 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "A union breaches its duty of fair representation 'when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Id.* at 805 (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). "Any substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) (citations omitted). Ultimately, the burden of proving a breach of the duty of fair representation is on the plaintiff. *Beck v.*

*United Food and Com. Workers Union, Loc. 99*, 506 F.3d 874, 879 (9th Cir. 2007) (citing *Vaca*, 386 U.S. at 193).

A claim under Section 301 of the LMRA formally comprises two causes of action: "(1) a cause of action against the employer for breach of the collective bargaining agreement, and (2) a suit against the union for breach of the union's duty of fair representation." *Rollins v. Cmty. Hosp. of San Bernardino*, 839 F.3d 1181, 1185 (9th Cir. 2016) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)). Section 301 claims may be brought "against the union, the employer, or both." *Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 913 (9th Cir. 2006). Regardless of whom a plaintiff elects to sue, "the required proof is the same: [t]he plaintiff must show that there has been both a breach of the duty of fair representation and a breach of the CBA." *Id.* (citing *DelCostello*, 462 U.S. at 164–65). The two claims inherent in a hybrid Section 301 cause of action are "inextricably interdependent" and therefore rise or fall together. *See DelCostello*, 462 U.S. at 164 (citations omitted).

As Plaintiff pleads a violation of the duty of fair representation under all three of its prongs, the Court analyzes each in turn. *See Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council*, 322 F.3d 602, 617 (9th Cir. 2003) ("Whether a union acted arbitrarily, discriminatorily or in bad faith requires a separate analysis, because each of these requirements represents a distinct and separate obligation." (citation omitted)).

**1. Arbitrary**

"Conduct can be classified as arbitrary 'only when it is irrational, when it is without a rational basis or explanation.'" *Beck*, 506 F.3d at 879 (quoting *Marquez*, 525 U.S. at 46). The standard for arbitrary conduct is necessarily deferential and "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id.* (citation omitted). "Under Supreme Court precedents, so long as a union exercises its judgment, no matter how mistakenly, it will not be deemed to be wholly irrational." *Id.* (citing *Marquez*, 525 U.S. at 46); *see also O'Neill*, 499 U.S. at 78. Courts "may decline to give a union the deference owed to an exercise of judgment only where union actions or

inactions are 'so far outside a wide range of reasonableness that [they are] wholly irrational or arbitrary.'" *Beck*, 506 F.3d at 879 (quoting *O'Neill*, 499 U.S. at 78).

Plaintiff has not plausibly alleged the Union's actions or inactions were "wholly irrational or arbitrary." Plaintiff's allegations against the Union in the Complaint are sparse, most containing threadbare legal conclusions unmoored from specific, factual allegations required to cross the line "between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 678. For example, Plaintiff states he notified the Union "in writing that multiple engineers were not legally qualified under EPA 608 requirements," but provides no additional factual allegations. (Compl. at 3.) This bare allegation contains no further detail on what occurred, and no explanation of how failure to act on these requirements constituted arbitrary conduct. Plaintiff's allegation that his promotion to Building Engineer in late 2021 "plac[ed] . . . the Union on notice of ongoing federal and contractual violations" (*id.*) is disconnected from any factual allegations stating what those violations were, and how exactly his promotion placed the Union on notice of these violations. Plaintiff later asserts that he "repeatedly attempted, over a period of months, to resolve his grievances through both [Pride] and the Union." (*Id.* at 5.) Plaintiff then flatly states that the Union "failed to meaningfully pursue enforcement of the CBA." (*Id.*)[4] None of these allegations contain sufficient factual support to overcome Rule 12(b)(6) scrutiny.

Plaintiff's exhibits fare no better. Exhibits 1, 3, 4–5, and 8 appear to be communications exclusively between Plaintiff and Pride and do not reference the Union at

---

[4] Most of Plaintiff's allegations are reminiscent of the "formulaic recitation of the elements of a cause of action" and "naked assertions devoid of further factual enhancement" that simply do not suffice under federal pleading standards. *See Iqbal*, 556 U.S. at 678 (citation modified). For instance, Plaintiff asserts that "[t]he Union breached its duty of fair representation by acting arbitrarily, discriminatorily, and in bad faith, including but not limited to: a. refusing to process or pursue Plaintiff's grievances; b. ignoring clear and unambiguous CBA language; c. failing to enforce qualification, seniority, and wage provisions; d. acquiescing in PRIDE's unlawful conduct; [and] e. failing to protect Plaintiff from retaliation." (Compl. at 7.) Plaintiff's other allegations are simply bare legal conclusions, for example: (1) summarily stating that the Union's "actions constitute a breach of the duty of fair representation" (*id.* at 8); and (2) stating without further factual enhancement that the "Union acted arbitrarily, discriminatorily, and in bad faith." (*Id.* at 10.) Conclusory allegations like these are not entitled to the presumption of truth. *See Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 896 (9th Cir. 2021) (citations omitted).

all. Exhibits 2 and 6 are excerpts from the CBA. The only exhibit directly referencing the Union is Exhibit 7, which includes a formal grievance filed by Plaintiff over his layoff and an "Intent to Sue" letter addressed to the Union. (Compl. Ex. 7.) Exhibit 7, like the Complaint, is largely conclusory and devoid of concrete factual allegations.

There are two specific points worth addressing in Exhibit 7. The first is the allegation that Plaintiff spoke with two Union representatives ("Benjamin and Diego") on November 12, 2025, regarding Pride's alleged retention of employees that lacked certain required EPA certifications. (*Id.*) Plaintiff claims the Union refused to pursue his report because the Union "will not go against union members." (*Id.*) However, unions have wide latitude to "make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez*, 525 U.S. at 45–46. The Union's decision not to pursue Plaintiff's grievance is not, by the Complaint's own allegations, "so far outside a 'wide range of reasonableness' as to be irrational." *See Conkle v. Jeong*, 73 F.3d 909, 915 (9th Cir. 1995) (quoting *O'Neill*, 499 U.S. at 67). In any event, this allegation does not provide sufficient detail to draw a reasonable inference that the Union's actions were arbitrary.

The second point is Plaintiff's allegation that Union representatives refused to allow him to submit a grievance in contravention of the grievance procedures in the CBA. (Compl. Ex. 7.) It is longstanding precedent that a union breaches the duty of fair representation where it "ignores a meritorious grievance or processes the grievance in a perfunctory fashion. However, a union does not breach its duty of fair representation when it does not process a meritless grievance or engages in mere negligent conduct." *Zuniga v. United Can Co.*, 812 F.2d 443, 451 (9th Cir. 1987) (citation omitted). Plaintiff does not provide any factual enhancement for the bare allegation that the Union refused to allow him to submit a grievance sufficient to allow the Court to draw the reasonable inference that the Union's conduct was arbitrary or irrational, as opposed to merely negligent. Confusingly, Plaintiff alleges that he did in fact "submit[] grievances and written complaints regarding retaliation, seniority violations, unpaid sick leave, and unlawful conduct." (Compl. at 5.) Plaintiff should clear up these and other inconsistencies if he

would like to file an amended complaint in accordance with the Court's leave to amend, *see infra* Section III(C). While the Court applies a more generous construction of a pro se litigant's filings, it cannot act as a pro se litigant's advocate and supply missing facts or legal arguments.[5] The Court cannot conclude that the Complaint, as pleaded, supports a plausible cause of action for a breach of the duty of fair representation based on the arbitrary prong.

**2. Discriminatory and Bad Faith**

The Court addresses the remaining prongs together because they suffer from the same pleading deficiency. "A union's decision to discriminate against its members on an impermissible basis will violate the duty of fair representation only where the aggrieved members set forth 'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" *Demetris*, 862 F.3d at 806 (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). To state a plausible claim that a union breached its duty of fair representation through bad faith conduct, a plaintiff "must plead facts that, if true, show 'substantial evidence of fraud, deceitful action or dishonest conduct.'" *Id.* at 808 (quoting *Beck*, 506 F.3d at 880). "[M]ere negligence and erroneous judgment calls cannot, by themselves, support an inference of bad faith." *Id.* (citing *Stevens v. Moore Bus. Forms, Inc.*, 18 F.3d 1443, 1447–48 (9th Cir. 1994) ("[A]n error in judgment by the union does not constitute bad faith.")).

Plaintiff's complaint is devoid of plausible, factual allegations sufficient to give rise to Union liability under either the "discriminatory" or "bad faith" prongs of a duty of fair representation claim. As stated in detail above, *see supra* Section III(B)(1), Plaintiff's

[5] *See Sanchez v. Ryan*, No. CV-12-08195-PCT-NVW, 2013 WL 6076155, at *8 (D. Ariz. Nov. 19, 2013) ("A federal judge may not . . . be a *pro se* litigant's advocate, nor should such a judge 'supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his] behalf.'" (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997))). Federal courts have "no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

Complaint is largely filled with legal conclusions and bare assertions unadorned by sufficient factual allegations that can cross the line from mere possibility to plausibility. *Iqbal*, 556 U.S. at 678. The scant allegations against the Union in the Complaint do not plausibly plead "intentional, severe" discrimination, nor do they show "substantial evidence of fraud, deceitful action or dishonest conduct" by the Union. *See Demetris*, 862 F.3d at 806, 808 (citations omitted). Without detailed factual allegations plausibly alleging discrimination or bad faith, the Court cannot permit Plaintiff's Complaint to proceed as stated.

Accordingly, the Complaint fails to state a claim for breach of the duty of fair representation against the Union. It follows that the hybrid Section 301 claim also falls apart, as a breach of the duty of fair representation is one of its mandatory requirements. *See DelCostello*, 462 U.S. at 164–65. The Court therefore **GRANTS** the Union's motion to dismiss Counts V and VI.

**C. Leave to Amend**

Having granted the motion, the Court next determines whether leave to amend is appropriate. While leave to amend should be freely given where justice so requires, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes*, 656 F.3d at 1041.

With regard to Count I, it does not appear that Plaintiff will be able to plead any set of facts that would constitute a valid *Tameny* claim against the Union, rendering any amendment futile. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (amendments are "futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense"). Plaintiff does not engage with the Union's argument that it is not Plaintiff's employer. (*See generally* Opp'n.) By Plaintiff's own admission, the Union acted as his collective bargaining representative, not his employer. It follows that any amendment of Count I would be futile. Accordingly,

the Court denies Plaintiff leave to amend Count I as futile and **DISMISSES WITH PREJUDICE** Count I against the Union.

With regard to Plaintiff's remaining causes of action (Counts V and VI), the Union argues that they are just as futile as Count I. (*See* Mot. at 14.) The Union contends that Plaintiff's "Intent to Sue" letter in Exhibit 7 "reveals that the Union's alleged culpability consisted entirely of its refusal to take action against co-workers Plaintiff believed lacked EPA 608 certifications[.]" (*Id.*) It claims this "admission is fatal" in two ways: it negates the plausible inference that the Union acted arbitrarily, discriminatorily, or in bad faith toward Plaintiff during his employment; and it "severs" any causal connection between the Union's purported inaction and Plaintiff's layoff. (*Id.*) The Court is not willing to make such an inferential leap at this juncture. It is not immediately clear to the Court that there is "no set of facts . . . that would constitute a valid and sufficient claim or defense." *Miller*, 845 F.2d at 214. Accordingly, the Court grants Plaintiff leave to amend his Complaint with respect to Counts V and VI only.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss. (ECF No. 7.) Count I is dismissed against the Union **WITH PREJUDICE** and without leave to amend. Counts V and VI are dismissed **WITHOUT PREJUDICE** and with leave to amend.

If Plaintiff wishes to file a First Amended Complaint consistent with the Court's leave to amend, he must file it no later than **October 29, 2026**. Plaintiff is warned that if he does not allege sufficient factual detail regarding his claims, the Court may not provide leave to amend again. Plaintiff may not add any new parties or claims without leave of Court. If Plaintiff does not file an amended complaint by the deadline provided, the Court will dismiss the claims against the Union without further leave to amend and without further notice.

**IT IS SO ORDERED.**

**DATED: October 8, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**